CASE NO.:25-cv-1828

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CASE NO.:25-cv-1828

KYLE ENHOLM

Plaintiff,

v.

BALENCIAGA AMERICA, INC.; KERING AMERICAS, INC.;
VIRA CAPECI; and FABIO RIZZA

Defendants.

**STIPULATION REGARDING PRODUCTION
OF ELECTRONICALLY STORED INFORMATION ("ESI Protocol")**

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiff Kyle Enholm ("Enholm" or "Plaintiff"), and Defendants Balenciaga America, Inc. ("Balenciaga"), Kering Americas, Inc. ("Kering"), Vira Capeci ("Capeci"), and Fabio Rizza ("Rizza") (collectively "Defendants") (each, a "Party" and, collectively, the "Parties"), have stipulated and agreed to the following terms with respect to the production of electronically stored information ("ESI") in this Matter (the "Matter") as set forth herein (the "ESI Stipulation"):

**GENERAL PROVISIONS**

1.      This ESI Stipulation is being entered into to facilitate the collection, processing, production and exchange of documents and information in the matter of *Enholm v. Balenciaga America, Inc., et al*., Case No: 25-cv-1828 (the "Litigation") by the Parties in the form of ESI. The Parties expressly recognize and agree that this ESI Stipulation is solely limited to this action and shall not govern any other future litigation between the Parties whether arising out of this Litigation or any other court, mediation or arbitration forum.

2.      To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery

1

costs. The terms of this ESI Stipulation should be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure and any orders by the Court.

## DEFINITIONS

The following definitions apply to the terms used in this Stipulation:

3.     The term "ESI" includes, but is not limited to, emails and attachments, voicemail, instant messaging and other electronic communications, word processing documents, text files, hard drives, spreadsheets, graphics, audio and video files, databases, calendars, telephone logs, transaction logs, phone text messages, Internet usage files, offline storage or information stored on removable media, information contained on laptops or other portable devices and network access information and backup materials, Native Files and the corresponding Metadata which is ordinarily maintained. As the term is used herein, ESI is not to be deemed "inaccessible" based solely on its source or type of storage media. Inaccessibility is based on the burden and expense of recovering and producing the ESI and the relative need for the data. However, the Parties shall not be required to preserve or search information in data sources that are not reasonably accessible, including, but not limited to, back-up tapes, disaster recovery systems, offline archives, and data sources that are not used for normal business operations and/or require unreasonable expense or burden to search and produce. The Parties shall make a reasonable inquiry to ascertain whether they possess or control discoverable information in the form of telephone call logs, voice-mails, instant messages, and mobile phone text and picture messages.

4.     The term "Native File(s)" means ESI in the electronic format of the application in which such ESI was created, viewed, stored and/or modified. Native Files are a subset of ESI.

5.     The term "Load File" means a file that relates to a set of scanned or electronic images or electronically processed files that indicate where individual pages or files belong

2

together as documents, including attachments, and where each document begins and ends. A Load File may also contain data relevant to the individual documents, such as Metadata, coded data, text, and the like. Load Files must be obtained and provided in prearranged formats to ensure transfer of accurate and usable production images and data.

5. The term "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard litigation support software. The most common forms of Static Images used in litigation are ESI provided in Portable Document Format (PDF).

6. The term "OCR text" means text that is generated by converting Static Images into searchable text format.

7. The term "Producing Party" shall mean any Party to this action or any third-party, including its counsel, retained experts, directors, officers, employees, or agents, who produces any Discovery Material during discovery for this action.

8. The term "Receiving Party" shall mean any Party to this action, including its counsel, retained experts, directors, officers, employees, or agents, who receives any Discovery Material from a Producing Party during this action.

9. The term "Discovery Material" shall mean any document, material, item, testimony, or thing filed with or presented to the Court or produced, served, exchanged, or generated during the discovery process.

## SCOPE OF RELEVANT ESI TO COLLECT AND REVIEW

1. The Parties will meet and confer to establish agreed-upon date limits and ESI custodians for collection and production. Once the date limits and ESI custodian list are established, they may be modified upon agreement by both parties or by the Court. Notwithstanding the foregoing, the Parties recognize that each party likely will not be aware of

the identities of all relevant custodians for the opposing party until after the commencement of discovery, and potentially even following discovery.  Therefore, the Parties agree to meet and confer in good faith regarding additional potential custodians following exchanges of written discovery and document productions, and following depositions, if they reveal additional custodians that may possess relevant information not possessed by existing custodians, or if any party otherwise identifies potentially relevant custodians.

2.      Parties may engage in the method of review they deem most efficient and effective for identifying all responsive, non-privileged documents in the review queue, including TAR, targeted review, and linear review.

3.      Should any Party desire to seek additional data beyond the scope of this Agreement, the Requesting Party must make the request defining the exact parameters of the additional data sought. Where such a request is made, the Parties shall meet and confer and attempt in good faith to reach agreement as to the timing and conditions of such expansion. If the Parties cannot reach agreement, any dispute shall be presented to the Court.

## PRODUCTION FORMATS

1.      ESI shall be produced in the form specified herein. No Producing Party may reformat, scrub or alter the ESI to intentionally downgrade the usability of the data.

2.      With the exception of the documents identified in Paragraph 4, the Parties shall produce all ESI in single-page TIFFs, in Group IV black and white format, with Load Files for all documents.

3.      A document and all other documents in its attachment range constitute a family group.  If any member of a family group is produced, all members of that group must also be produced or else logged as privileged without breaking the grouping of these documents.

4.      The Parties shall provide Native Files for XLS, Audio, Video, and non-standard format documents. For any document produced as a Native File, the Parties shall also produce a TIFF image placeholder with a sequential Bates number that corresponds with the Native File.

5.      All documents must be endorsed with sequential Bates numbers on the lower right-hand corner of all images using an alphabetical term to identify the producing party followed by the document number with any claimed confidentiality status as per the Parties' Stipulated Protective Order (the "Stipulated Protective Order").

6.      The Parties will make reasonable efforts to de-duplicate ESI documents globally prior to production.

7.      Productions shall be provided by the Producing Party using a secure file exchange FTP site. If an FTP site is not available to the Producing Party, the Producing Party may upload their production to the Receiving Party's FTP site. In the event a secure FTP site is unavailable, productions may be exchanged as .zip files via encrypted email. The Producing Party shall identify the Bates range contained in each respective production volume at the time of delivery.

8.      Regardless of any agreed-upon phasing of discovery, the Parties agree that rolling productions are acceptable, unless otherwise ordered by the Court. The Parties shall promptly produce materials when ready and not intentionally withhold materials based on a rolling production agreement.

9.      Certain types of files that are attached to emails usually contain information that is not material to an action, a.k.a. "junk files." The Parties agree that no Party is required to produce files with a .vcf extension or any files that are less than 3,000 kb in size with the following file extensions: .jpeg; .gif; .png; .jpg; and .bmp. Such excluded files shall not include product labeling files relevant to the issues in this litigation. For sake of clarity, the purpose of this paragraph is to eliminate the need to produce corporate logo image files that frequently appear at the base of corporate emails. If, after

receiving a production, a Receiving Party can show a legitimate need for information contained in the file extensions identified in this paragraph, it may request that certain files associated with particular Bates numbers to be produced.

10.     If a document is redacted, the Producing Party shall produce OCR text of the un-redacted portions of the document. No text from the redacted portion of the document will appear in the text file. Failure to withhold OCR text from a redacted portion of a document by a Producing Party shall not be deemed a waiver of any privilege associated with that document.

11.     Documents that are redacted shall indicate what pages or portions of pages have been redacted.

12.     Documents containing responsive private or highly confidential information shall be stamped with either "Confidential" or "Confidential – Attorneys Eyes Only" in accordance with the Protective Order for this dispute. These stamps will be placed in the bottom left hand corner of produced PDFs of documents containing private or highly confidential information. When a document containing confidential information is produced in Native format, the proper confidential designation shall be placed in the bottom left hand corner of the PDF placeholder sheet containing the bates stamp. The Parties agree that, due to the technical nature and limitations of how ESI productions are created, confidentiality stamps pertaining to the highest designation applicable to a document may be placed on every PDF page of the document, not just the page containing the confidential information. Note that this exception will not extend to all documents in a family, only the one document containing confidential information.

## PRIVILEGE LOGS

1.     The Parties agree that the following documents need not be included on a privilege log:  (a) Communications on or after the filing of this lawsuit, regarding this litigation or in anticipation of this litigation; and (b) communications generated before the filing of this lawsuit

that constitute attorney-client communications or work product in anticipation of this litigation: (1) between the parties and their counsel (including internal communications within a law firm or legal department of a corporation), (2) to or from outside legal counsel, (3) from in-house counsel, and (4) to in-house counsel where in-house counsel is the only recipient; and (b) Work product created by or for trial counsel.

## NO INADVERTENT WAIVER

1.      Nothing herein shall be interpreted or deemed to waive any privilege recognized by law, including attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable, or shall be construed to imply that any documents produced under the terms of this ESI Stipulation are properly discoverable, relevant, or admissible in this Litigation or in any other litigation, mediation, or arbitration. Additionally, nothing in this ESI Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain ESI, pursuant to Federal Rule of Civil Procedure 26 on the ground that the sources are not reasonably accessible because of undue burden or cost, or are not proportional to the needs of the case, or are being withheld as documents subject to the attorney-client privilege or attorney work-product doctrine. Where manual searching and reviewing of ESI for responsiveness and privilege may be unduly burdensome or costly to a Party, or not proportional to the needs of the case, the Parties may discuss use of a search term protocol or proposed searching methodologies to aid in or make more efficient the ESI collection, review, and production process. No Party is obligated to use a proposed search term protocol or proposed searching methodologies, and if the Parties agree to a proposed search term protocol or proposed searching methodologies, the Producing Party does not waive any objections to production pursuant to Federal Rule of Civil Procedure 26, including, but not limited to, objections relating to burden or proportionality.

2.      Pursuant to Federal Rule of Evidence 502(d), the production of documents, whether inadvertent or otherwise, that a Producing Party believes in good faith are subject to a claim of attorney-client privilege or work-product immunity is not a waiver in the action or in any federal or state proceeding. Unless previously waived, the disclosure of any privileged information, with inadvertent or otherwise, shall not be deemed a waiver of that privilege or immunity as to any other documents, testimony, or evidence. If a Receiving Party finds information that the Producing Party produces or provides discovery that is subject to a claim of attorney-client privilege or work-product immunity, the Receiving Party shall inform the Producing Party as soon as possible, return to the Producing Party all copies of such document and return or destroy all excerpts thereof within three (3) business days of finding the information. If the Producing Party becomes aware that it may have provided information subject to the attorney-client privilege, it may give written notice to the Receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the Producing Party. Upon receiving written notice, the Receiving Party shall return to the Producing Party all copies of such document and shall return or destroy all excerpts thereof within three (3) business days of receiving such written notice, provided that, if the attorney-client privileged or work product immunity is contested, a copy may be maintained by the Receiving Party and provided to the Court for an in camera review for determination whether the designation is proper. The Receiving Party will not review the contested discovery until the Court renders it ruling, and will return or destroy the contested discovery if the Court rules that it is protected by either the attorney-client privilege or work product doctrine.

3.      The Parties agree to promptly alert each other concerning any technical problems associated with complying with this ESI Stipulation. To the extent compliance with this ESI Stipulation imposes an undue burden with respect to any protocol, source, or search term, the Parties shall promptly confer in an effort to resolve the issue. If the Parties are unable to resolve

the issue by mutual agreement after such conference, the Party seeking relief may move the Court for relief for good cause shown.

4.      This ESI Stipulation may be changed by order of the Court or further signed written agreement of the Parties, and is without prejudice to the rights of any Party to move for relief from any of its provisions, or to seek or agree to different or additional procedures or protections for any particular ESI materials or information.

5.      Search Term Hit Count Reports and Modification of Search Terms. Should there be a need to narrow, modify, or abandon any search term set forth in Exhibit A, the Producing Party shall provide to the Requesting Party a Search Term Hit Report ("STR") reflecting the number of documents returned by such search term so that the Parties can meet and confer in good faith. The Parties shall negotiate any proposed modifications to search terms in good faith within ten (10) business days of receipt of the STR.

6.      Personal Devices and Accounts. Defendants shall advise Plaintiff whether any custodian identified in Exhibit A[1] used a personal device (including personal smartphones, tablets, and laptops) for communications concerning any matter at issue in this litigation during the relevant time period. If a custodian used a personal device for communications concerning any matter at issue in this litigation during the relevant time period, Defendant will ensure that the personal devices are preserved and the Parties will meet and confer regarding targeted searches for the personal devices.

7.      Metadata Fields. All productions of electronically stored information shall include the following metadata fields to the extent reasonably available: for email ESI: DateSent, DateReceived, From, To, CC, BCC, Subject, AttachmentNames, Custodian, and FilePath; for non-

---

[1] Not including Tommie Mianecki who is no longer an employee of Balenciaga or Kering.

email ESI: Author, DateCreated, DateModified, FileName, FileExtension, Custodian, and FilePath. Where a document is produced in TIFF format rather than native format, the Producing Party shall provide an accompanying load file containing the foregoing metadata fields. The Parties shall meet and confer regarding any metadata fields that cannot be produced for particular document types or sources.

8.      Metadata to be Produced: The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.  All requests should be read to include a request for all metadata associated with all documents responsive to the request.

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **BEGDOC** | Starting bates | Hardcopy, edoc, email and attachment |
| **ENDDOC** | Ending bates | Hardcopy, edoc, email and attachment |
| **CUSTODIAN** | Custodial or non-custodial source(s) from which the document was collected | Hardcopy (if coded), edoc, email and attachment (populated through processing) |
| **ALL CUSTODIANS** | Custodial source(s) from which document was collected but subsequently suppressed as a duplicate during processing. | Edoc, email and attachment (populated through processing) |
| **FAMILYIDOR ATTACHID** | Family (Range of bates related documents (i.e email & attachment) - this field will be populated for all records in the family), and will distinguish parent documents from attachments. | Hard copy, edoc, emails and attachments (populated through processing) |
| **PRPERTIES OR RCRDTYPE** | Record type – will be either "email," "attachment," "edoc," or "hardcopy." | |
| **FROM** | Email Author | Emails (populated through processing) |

CASE NO.:25-cv-1828

| FIELD NAME | DESCRIPTION | CATEGORY |
| --- | --- | --- |
| **TO** | Recipient | Emails (populated through processing) |
| **CC** | CC field - In the event of emails | Emails (populated through processing) |
| **BCC** | Bcc field - in the event of emails | Emails (populated through processing) |
| **SUBJECT** | Subject | Emails (populated through processing) |
| **DOCTITLE** | Document Title/name of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc or attachment (populated through processing) |
| **DOCDATE** | Document Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email and Attachments |
| **DATESENT** | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| **TIMESENT** | Time sent, format 00:00:00 AM/PM | Emails (populated through processing) |
| **DATECREATED** | Date first created, format MM/DD/YYYY | Edoc or attachment (populated through processing) |
| **PAGECOUNT** | Document page count | Edoc or attachment (populated through processing) |
| **ATTILE** | File name/attachment name | Electronic files and/or attachments (populated through processing) |
| **APPLICAT** | Application used to open the file (Word, Powerpoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files and/or emails, attachments (populated through processing) |
| **FOLDERID OR ORIGFOLDERPATH OR FILEPATH** | File path/folder structure of original native file as it existed at the time of collection.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs or scanned documents (if requested) | Electronic files and/or emails, attachments (populated through processing) |

11

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| ALL FILEPATHS | File path/folder structure of original native file as it existed at the time of collection but subsequently removed as a duplicate.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs or scanned documents (if requested) when duplicate copies were suppressed during processing. | Electronic files and/or emails, attachments (populated through processing) |
| DOCLINK or NATIVEFILE | Active link reflecting current filepath back to the native file | Electronic files and/or emails, attachments (populated through processing and only provided if receiving native files.) |
| FILE EXTEN | In the event of attachments or emails, this will enable us to search by document type.  Sample contents: *PST*, *MSG*, *PDF*, *DOC*, *PPT*, *HTM*, etc. | Electronic files and/or emails, attachments (populated through processing) |
| FILESIZE | Numerical file size, in bytes, of any natively-produced documents. | Electronic files and/or edocs (populated through processing). |
| AUTHOR | In the event of attachments, this field contains the 'author' of the document | For Hard Copy documents (if coded) or electronic files and/or attachments (populated through processing) |
| HASH | MD5 Hash value for de-dupe | Electronic files and/or attachments (populated through processing |

**AGREED TO BY:**

*s/  Zachary Holzberg*
Zachary Holzberg
zachary@dereksmithlaw.com
DEREK SMITH LAW GROUP


*Counsel for Plaintiff*


SO ORDERED.    June 12, 2026

SARAH L. CAVE
United States Magistrate Judge

*s/   Bianca Olivadoti*
Bianca Olivadoti
Annabel Stanley
Bianca.olivadoti@jacksonlewis.com
Annabel.stanley@jacksonlewis.com
JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
Telephone: (212) 545-4000


*Counsel for Defendants*

12